FRANK M. NIXON,

*Plaintiff and Appellant,*

vs.

CLINTON J. EDWARDS and GENEVIEVE B. EDWARDS,

*Defendants and Respondents.*

(No. 2571; December 8th, 1953; 264 Pac. (2d) 287).

For the plaintiff and appellant the cause was submitted upon the brief of Harold M. Johnson of Rawlins, Wyoming, and oral argument by Mr. Johnson and Mr. Dudley D. Miles also of Rawlins, Wyoming.

For the defendant and respondent the cause was submitted upon the brief and also oral argument of Robert S. Lowe of Rawlins, Wyoming.

## OPINION

BLUME, Chief Justice.

This case involves the question of whether or not the road in question herein is a public road. The action herein was brought on February 28, 1951. In an amended petition the plaintiff alleged that he is, and since February 23, 1937, has been the owner and in possession of Section 4, Township 17 North, Range 84 West of the 6th P. M.; that plaintiff constructed a road along the east side of the foregoing section but that defendants since March 25, 1941, traveled back and forth upon the road so built by him causing vehicles in which they were riding to make great ruts on plaintiff's land which interfered with the irrigation and that recently defendants raised the level of the road and built

fills without plaintiff's permission. Plaintiff asked that the defendants be enjoined from using the road. Defendants denied the allegations of the amended petition and filed a cross petition in which they assert that for more than twenty years defendants and their predecessors had a stock right of way across the land of the plaintiffs; that the road in question is appurtenant to the lands of the defendants which are adjacent to plaintiff's lands and for more than ten years before the commencement of the action, the defendants and their predecessors in interest have used and traveled said road, openly, notoriously, peacefully and adversely to plaintiff and in fact members of the public generally have done so in the same way and for many years prior to that time. Defendants accordingly claimed an easement over the road; they asked that plaintiff be enjoined from interfering with their use of the road. In the reply, plaintiff denied the allegations of the cross petition. The case was submitted to a jury, apparently in an advisory capacity. See § 3-2105, W.C.S. 1945. At the close of the evidence in the case, the defendants, by their counsel, stated to the court that they would not proceed on the theory that the road in question was a private road in which they had an easement, but upon the theory that the road in question was a public road. The court, over objection of plaintiff, then instructed the jury, among other things, in Instruction No. 9, that a public road might be established "(1) By an acceptance of the public of a right-of-way granted by the Federal Government prior to the date of the issuance of the Homestead Patent on the said Section Four on December 22, 1888, or (2) By continuous, open, notorious and adverse use of the road for a period of ten years or more, which said use must be without the consent of the then owner."

It may be noted here that recognition by the public authorities was entirely omitted, the holding being that a public road might be established by adverse use alone. The court also submitted special findings substantially to the effect as mentioned in Instruction No. 9, namely, whether or not the road in question had been used prior to December 22, 1888, when the patent to Section 4 was issued. To this question the jury answered, "No". The second question submitted was whether or not the road had been used adversely substantially in its present location for a continuous period of ten years after December 22, 1888, and prior to February 28, 1951. This question was answered by the jury by "Yes", and that the road was so used from 1934 to February 28, 1951 by truckers, ranchers and the general public. Thereupon the court rendered judgment, to which plaintiff excepted, denying plaintiff any relief upon the amended petition, holding that the road in question was a public road and that the defendants had the right without let or hindrance to use the road in question as members of the general public. Plaintiff thereupon filed a motion for judgment notwithstanding the verdict which was overruled. An appeal was thereupon duly taken to this court by the plaintiff.

The town of Saratoga which lies southeast of the lands of both plaintiff and defendants is the trading center of the parties herein. A road which goes by the name of Jack Creek School Bus Road leads west and north out of the town of Saratoga until it reaches the southeast corner of Section 4 hereinbefore mentioned; then it runs north along the east line of Section 4 to a short distance north of the east quarter corner of said Section 4 and then turns west. The road in dispute in the case at bar, marked A to B on the map in evidence, extends from the northeast corner of Section 4 and runs along the east boundary line of that section in a

southerly direction to connect with the Jack Creek School Bus Road, and is accordingly slightly less than half mile in length and is west of a fence which is constructed on the east side of the road. This road was constructed by the plaintiff for his own convenience from 1931 to 1934, with the consent of the then owner of Section 4, and since that time has become the owner of the land. The defendants' land lies directly north of Section 4 aforementioned, being Section 33, Township 18 North, Range 84 West of the 6th P. M. The dwelling of the defendants is located in about the center of Section 33. A public road runs along the west side of said Section 33 and Section 4 and which may be used by the defendants when going to the town of Saratoga. That road, however, is at times impassable during the winter time on account of snow drifts obstructing part of the road, which appears not to be true in connection with the road in question herein. So the most convenient way, at least during the winter time, for the defendants or their tenants to go to Saratoga, is by traveling from the center of Section 33 aforesaid to the southeast corner of that section which is also the northeast corner of Section 4 and then travel south a little less than half a mile on the road in dispute to connect with the Jack Creek School Bus Road.

The evidence indicates that the road in dispute herein was used by at least some members of the public commencing with 1934 as found by the jury. Counsel for the plaintiff argues that there was not sufficient evidence to establish general public use, and all travel thereon was merely permissive and not adverse, especially in view of the fact that gates were maintained thereon. It is not necessary, however, to consider these questions herein and for the purpose of this case we may assume that there was an adverse use by the general public commencing with 1934, as found by the

jury. The road—we take it—was never officially established as a public road, nor is there any evidence in the record that the public authorities of Carbon County—the county in which the road here in question is situated—recognized the road for the period of ten years prior to the commencement of this action on February 28, 1951. On the contrary, the evidence shows that the first public work that was done on the road apparently was done in 1943, and that it was done as an accommodation to the parties and with the permission of the plaintiff. We think the outline of the facts herein mentioned will be sufficient for us to determine the questions of law involved. The parties will be designated herein as in the court below.

1. On Legislation before 1919.

It is the contention of counsel for the defendants herein that there may be public roads which need not be maintained by the public authorities, and that such roads may be established by public use alone without being recognized as such by the public authorities. Counsel for plaintiff, on the other hand maintains that no public roads exist in the state except those established formally and directly by the statute of this state or by the public authorities, and that in any event no public road may be established by public user alone, and must in addition to public user be recognized by the public authorities as such by doing work thereon for the full period of prescription of ten years, and that no evidence of such recognition (as is true) appears in the case at bar. Counsel for defendants contends that there is no substantial difference between past and present statutes on the subject, all favoring his contention herein. So we have deemed it advisable, if not necessary, to review our legislation on highways, insofar as necessary, nearly from the beginning, so that we have a comprehensive view of the subject. It cannot be ques-

tioned, it seems, that what shall or shall not be public roads or highways is, subject to constitutional limitations, exclusively within the province of the legislature. 39 C.J.S. 946, § 27; 25 Am. Jur. 350, § 19.

As early as 1877 (Laws of 1877, page 125) the legislature inaugurated a policy to cause the rural public roads in this commonwealth to be spread upon the public records. That was emphasized by Chapter 99 of the Session Laws of 1886, which provided in Section 1: "That all county roads shall be under the supervision of the board of county commissioners of the county wherein said road is located, and no county road shall be hereafter established, nor shall any such road be altered or vacated in any county in this Territory except by authority of the county commissioners of the proper county." Subsequent legislation (as shown by the legislation of 1895) slightly amended that section by adding at the end thereof "except as in this Act provided", thus showing that no roads could thereafter be established except by official action of the board of commissioners, namely by petition, appointment of viewers, appraisers, etc., as in the Act provided. The Act, it may be noted, refers to county roads, instead of public roads. There is, however, nothing peculiar in that, since "public" roads might include roads in municipalities. There may have been at that time one territorial wagon road (Laws 1877, p. 135), and possibly some private toll-wagon roads (§§ 524-526, Rev. St. 1887) for miners and others but the ordinary public roads situated in the various counties in the rural districts, outside of municipalities, were not improperly designated as county roads, some of which, as implied in the Act, had not then been established officially. The Legislative Acts of 1869, 1877 are set out in Board of Commissioners of Sheridan County v. Patrick, infra, and need not be set out here.

The legislature in 1895, by Chapter 69 of the Legislative Acts of that year, repealed all prior acts, and attempted to enact a complete code relating to rural public highways. In so far as pertinent herein, the provisions are as follows:

Section 1. "All roads within this state shall be public highways which have been or may be declared by law to be national, state, territorial or county roads. All roads that have been designated or marked as highways on government maps or plats in the record of any land office of the United States within this state, and which have been publicly used as traveled highways, and which have not been closed or vacated by order of the Board of County Commissioners of the county wherein the same are located, are declared to be public highways until the same are closed or vacated by order of the Board of County Commissioners of the county wherein the same are located, and the board or officer charged by law with such duty shall keep the same open and in repair the same as in the case of roads regularly laid out and opened by order of the Board of the County Commissioners."

Section 2. "All county roads shall be under the supervision, management and control of the Board of County Commissioners of the county wherein such roads are located, and no county road shall hereafter be established, altered or vacated in any county in this state, except by the authority of the Board of County Commissioners of the county wherein such road is located, except as is in this Act provided."

Section 57 of the Act, which is the same as Section 32 of the Act of 1886, provided: "When any public road heretofore laid out or traveled as such or *hereafter* to be laid out *or traveled* as a public road, crosses any stream of water, * * * the ford, if the stream be ford-

able, should be considered as a part of the road so established or traveled. (Italics supplied.) This section was considered in the case of Hatch Bros. Co. v. Black, infra. It was carried through the various compiled statutes, but was specifically repealed by Chapter 73, Section 179, of the legislative Act of 1931 (page 137).

Chapter 69, Section 64 of the Act of 1895, after repealing all prior acts provided: "* * * but any and all proceedings heretofore instituted prior to the taking effect of this Act, under statutes hereby repealed, shall be continued and completed the same as if this Act had not been passed, and any and all rights obtained by, secured to, or vested in the public or any person, corporation or association of persons under laws existing at the time of the taking effect of this Act, are hereby preserved and continued in force the same as if this Act had not been passed." This provision, too, was considered in Hatch Bros. Co. v. Black, infra. It was never, by oversight or otherwise, embodied in the Compiled Statutes of 1899, 1910 or 1920, and was not embodied in the Revised Statutes of 1931, and must, accordingly, be considered as repealed.

The statute of 1895 was construed in Hatch Bros. Co. v. Black, 25 Wyo. 109, 165 P. 518, 25 Wyo. 416, 171 P. 267 (1917), and Board of Commissioners of Sheridan County v. Patrick, 18 Wyo. 130, 104 P. 531 and 107 P. 748 (1909). Since counsel for plaintiff as well as counsel for defendant find comfort in these cases, we shall briefly review them.

The case of Hatch Bros. Co. v. Black, supra, is in no way in conflict with our conclusion herein. The case is based on the doctrine of public dedication and acceptance of the dedication by the public. The road in question was over public land and was used by the public

since about 1875. A homestead was located on the land over which the road ran in 1912, and the question was as to whether or not the road over the land could be closed by the locator. By an act of 1866, the United States provided that "right of way for the construction of highways over public lands, not reserved for public use, is hereby granted." The court held that the grant by Congress could be accepted by user alone, and further stated that: "We discover nothing in these several statutes, as we understand them, prohibiting the public from accepting the grant of the right of way; but on the contrary, they appear to recognize that right." The court, in connection with the language just quoted, relied (1) upon the fact (apparently) that the road was shown on maps of the United States as mentioned in section 1 of the legislation of 1895, and further (2) upon the provisions of section 64 which preserved all rights previously acquired. Since the road in question in that case was established as early as 1875, the decision in the case was correct. The court, it is true, also mentioned (3) the words in section 57 of the Act reading: "When any public road heretofore laid out or traveled as such or *hereafter* to be laid out *or traveled* as a public road, * * *". Section 57 did not relate to the establishment of any public road. It merely provided that when it was necessary in traveling on a public road to cross a stream, the crossing over the stream should be considered a part of the public road. The section is not necessarily inconsistent with section 2, when we consider the general policy of the latter that rural public roads should hereafter be established only officially. If inconsistent, it is by reason of the use of "or" instead of "and". See 82 C.J.S. 673. It may be, however, that the court in the foregoing decision, by italicizing the words above italicized meant that section 57 indicated that roads hereafter traveled publicly need not necessarily be estab-

lished officially, and thus there might be roads which, if running over public land, might become public roads by user alone, thereby accepting the grant of the government. Howsoever this may be, it is not necessary to dwell upon the matter. It has no effect on the case at bar. The road in dispute herein does not run over public land. Section 57 was expressly repealed as previously mentioned in 1931 and before the road in dispute herein was privately established. The provision as to maps and plats in section 1 of the Act of 1895 is no longer the law of the state, and section 64 of the Act was not embodied in the Revised Statutes of 1931, so that none of these three factors which the court considered in the foregoing decision have any bearing on the case at bar.

Counsel for plaintiff contends that the second case above mentioned, namely, Board of Commissioners of Sheridan County v. Patrick, supra, establishes the fact that the road in dispute herein is not a public road, in that it holds that a public road may not be established by adverse public use alone for the prescriptive period, but that in addition thereto recognition of the road as a public road by the proper public authorities is necessary, and that for the prescriptive period. It appears in the Patrick case that a road had been established in the early '80s, apparently by public authorities, along section lines of land owned by Patrick. The road actually traveled, however, for some 19 years was not along section lines. Patrick discovered this fact and closed the traveled road, so that it should conform to the section lines. The question was as to whether he could be enjoined from closing the road. It was held that he could not, in view of the fact that the road had not been recognized by the county authorities by doing work thereon for the full period of prescription. It would seem that the court recognized the doctrine of

prescription as applied to highways, but under the condition that it was recognized by the public authorities for the required prescriptive period. Mr. Justice Scott said in the main decision as follows (18 Wyo. 130, 104 P. 531, 532) "Evidence of assumption of control and of jurisdiction over the road by the public through its proper authorities, as by recognition and working the road by public authority, for the required length of time, is, we think, necessary to support the title by prescription. In other words, a claim of public right is essential, and such claim can only be made by the public through its duly constituted authorities. Steward v. Frank, 94 N. C. 487, 55 Am. Rep. 619." A number of other states hold likewise. See 39 C.J.S. 930, § 10. The foregoing statement is clear and specific. But it is claimed by counsel for the respondent that the land in the Patrick case was wild and unenclosed land, while in the case at bar, the land was enclosed, and hence the case does not apply here. It is true the court mentioned the matter. Thus in the opinion on rehearing in the Patrick case, Mr. Chief Justice Potter stated (18 Wyo. 130, 144, 107 P. 748, 750) : "Owing to the conditions that have existed in this state, and continue to exist, we are of the opinion that the only reasonable rule, in the absence of a statute to the contrary, is, as stated in the former opinion, that to establish a prescriptive right as against the mere silence of the owner of wild, uncultivated, unoccupied, open and inclosed land, there should be shown, in addition to the use of a road by the public, the assumption of control and jurisdiction over it by the board of county commissioners for the statutory period of limitation." That would seem to indicate that the court meant to limit the rule announced in the case to a public road over uncultivated and unenclosed land. Yet preceding that statement the able jurist states that had it been intended that user alone would have been sufficient to establish a highway,

as provided in some statutes, that would have been clearly expressed in our own statutes. He stated as follows: "There has never existed in this state a statute to the effect that the mere use of a road by the public may ripen into a title or right thereto by prescription, but in some states there is such a statute, which is held to qualify the common law rule. * * * The same liberality has not been shown by our Legislature in favor of a right by prescription to a public highway. * * * Upon a review of these statutes it cannot fail to be observed that there is a very significant omission of the provision found in some other states that a road shall be deemed a public highway from the fact alone that it has been publicly traveled as such for a certain number of years. With all the legislation on the subject, had such a purpose been intended, it would, we think, have been clearly expressed." These statements are unequivocal. They state definitely that no public road can be established in this state by public user alone. The only way in which to escape from the force of these statements is by saying that they were obiter dicta, in view of the fact that the road involved in that case ran over unenclosed land. It is not improbable that all statements above quoted may be harmonized, in that, in the opinion of the court in the Patrick case, the fact that the land is cultivated and enclosed or uncultivated and unenclosed merely goes to the point of the amount of proof necessary to prove adverse user, it being easier to prove such adverse user in the case of land that is cultivated and enclosed but requiring recognition of the road by the public authorities in either case. However, whatever doubt there is on the point, subsequent legislation settled the matter.

2. Legislation of 1919 and 1921.

Before proceeding further, we might incidentally say that we leave out of consideration in this case matters

relating to streets and alleys in municipalities or additions thereto, in connection with which the doctrine of dedication is often peculiarly applicable. The statutes involved in this case do not, we think, involve any streets or alleys, but relate only to rural public roads. See Elliott on Roads and Streets, 4th Ed. p. 24, § 22.

We have already heretofore noted, that commencing with at least the legislative act of 1886, nearly 70 years ago, the legislature adopted a general policy under which, while recognizing thoroughfares already in existence, all rural public thoroughfares thereafter established should be shown on the records of the public authorities. The legislative act of 1895, above mentioned, evinces the same general policy, enforcing it somewhat by adding that roads shown on United States maps and plats in the land offices in this state should be public highways, since these maps. and plats were at least in the nature of public records. That was the situation until 1919, when the legislature passed Chapter 112, amending Section 1 of the legislative Act of 1895 (§ 2513 Comp. St. 1910), and provided as follows:

"Public Roads Defined. On and after January 1st, 1922, all roads within this State shall be highways, which have been or may be declared by law to be national, state, territorial or county roads or highways. It shall be the duty of the several Boards of County Commissioners, within their respective counties, prior to said date, to determine what if any such roads now or heretofore travelled but not heretofore officially established and recorded, are necessary or important for the public use as permanent roads, and to cause such roads to be recorded, or if need be laid out, established and recorded, and all roads recorded as aforesaid, shall be highways. No other roads shall be highways unless and until lawfully established as such by official authority."

It may be noted at once, that while this court in Board of Commissioners of Sheridan County v. Patrick, supra, construed the then existing statutes as permitting the establishment by county commissioners informally, that is by mere recognition of a road, such as working it, the legislation of 1919 required that roads recognized as public are to be made of record, thus carrying to its ultimate conclusion the former policy that it should be made certain and definite as to what were public roads, and thus superseding in that respect the ruling in the Patrick case, supra. The Act directed the board of county commissioners to determine what roads theretofore traveled, but not officially established and recorded, were necessary for the public use, and then cause those thus found to be necessary, to be made of record. That included all roads marked on Governmental plats and maps, as well as all roads, the rights to which had been recognized by former legislative acts. It was meant to be all inclusive, and then specifically provided that "No other roads shall be *highways* unless and until lawfully established as such by official authority." Highways are public roads, and substituting the synonymous term "public roads", the act provided that no roads should be public roads unless and until duly established as the act provided. We do not see how any language could be plainer. In fact counsel for defendants herein states that "so only those roads which are set up by official act as provided in our statutes are highways." But in other portions of his brief he limits the public roads mentioned in the legislation to roads which the public authorities in the county must maintain, and contends, if we understand him correctly, that there are public roads which the public authorities are not compelled to maintain, but must be maintained by the users thereof. But we fail to find any intimation at least in present statutes that we have any hybrid public roads, and counsel has failed to point out any

provision to that effect. It is held that one of the prime requisites of a public highway is that the public authorities must maintain it. 39 C.J.S. 916, 25 Am. Jur. 339, § 2. As stated in Bankhead v. Brown, 25 Iowa 540, 549, where the roads in question were held not to be public roads: "The public are not bound to work or keep such roads in repair, and this is a very satisfactory test as to whether a road is public or private." The case was cited with approval in Wild v. Deig, 43 Ind. 455, 460, 13 Am. Rep. 399. In Boston & M.R.R. v. Daniel, 290 Fed. 916, 920, the court said: "It must be remembered that, in determining whether or not a road or way is a public highway, the essential feature is the responsibility of the town or other governmental subdivision in which the road is situated." Counsel mentions § 48,326 W.C.S. 1945 which provides for the establishment of a road by consent (by dedication as counsel states). But that section merely contemplates the omission of the appointment of viewer, and appraisers, etc. And the road need not be established. It is established only if the commissioners in their discretion order it to be established. Counsel say that the establishment of these roads "seems to clearly exclude the responsibility of the county to maintain them because they are 'public roads' and not 'county roads'." We do not so read the statute. The end of the section provides that such roads 'are hereby declared to be public roads, the same as if such roads had been legally opened." The maintenance thereof by the public authorities would seem to follow, so that that section in no way contradicts or modifies the provisions of the statute of 1919. Counsel further mentions that a private road —a road of necessity—may be established by the board of county commissioners. Such roads may be established at the expense of the parties who request them. They are strictly private roads, and we fail to see how

such statutory provision in any way contradicts, modifies or affects the legislation of 1919 .

When the legislation of 1919 was adopted there remained on the statute books, the provisions of § 57 of the Act of 1895. They were inconsistent with the Act of 1919, and they were found inconsistent therewith by the revisers of the Statutes of 1931, and were not embodied in the revision of that year, so that we do not, in any event have these provisions to consider at this late date.

What we have said is strengthened, if need of strengthening exists, by the provisions of Chapter 100 of the Legislative Acts of 1921, now § 48-301 W.C.S. 1945. In that legislation, for the phrase at the beginning "On and after January 1st, 1922", the legislature substituted, "On and after January 1st, 1924". No other change in the legislation of 1919 was made. The purpose is quite apparent. The legislature evidently found that the various boards of county commissioners had not been given sufficient time to cause all rural public roads to be shown on the records, and therefore extended the time in which that might be done for another two years. The intent to put a finishing touch to the policy inaugurated at least in 1886 is clear. It shows how thoroughly the legislature was convinced that all rural public roads should be shown on the public records. Our holding herein is not new. More than thirteen years ago we decided the case of George W. Condon Co. v. Board of County Commissioners, 56 Wyo. 38, 103 P. (2d) 401, 407, in which a contractor sought to recover for work done on a road. One of the important questions in that connection was as to whether or not the work done was in fact on a county road. In holding that it was not we stated in part: "The board never made a formal order to establish the road in question as a county road. The legislature of this state gave the county commissioners

until January 1, 1924, to make a record of all highways in the county, and provided that 'no other roads shall be highways unless and until lawfully established as such by official authority.' Section 52-201. That indicates a policy that roads should be shown on the records." After considering the point again from the present, different, and perhaps boarder viewpoint, we have no cause to retract the statement. We built better than perhaps we knew. We might add that this is not the only state in which public roads are to be shown on the public records though perhaps not so formally. Thus the court said in Dicken v. Liverpool Salt & Coal Co., 41 W. Va. 511, 23 S.E. 582, 583: " 'A road dedicated to the public must in some way, directly or by inference, be accepted by the county court upon its record, or by the municipal corporation, before it can become a public road.' "

In Commonwealth v. Kelly, (Virginia) 8 Grat. 632, a syllabus reads: "A road dedicated to the public must be accepted by the County court upon its records, before it can be a public road." See also cases cited below.

California and Montana have or had a statute which stated: "And no route of travel used by one or more persons over another's land shall hereafter become a public road or byway by use, or until so declared by the board of supervisors or by dedication by the owner of the land affected."

It was stated in Barnard Realty Co. v. City of Butte, 48 Mont. 102, 136 P. 1064, 1067, that this provision "clearly evinces the intention that no highway falling within the enumeration * * * should thereafter become a public right until declared so by the public authorities or had been made so by dedication by the owner of the land affected. * * * By these enactments the Legislature explicitly declared it to be the rule that after July

1, 1895, when the Codes went into effect, a highway could not be established by use unless the use should be accompanied by some action on the part of the public authorities having jurisdiction of the subject, tantamount to a declaration that the particular road was a public highway." Other cases from these states are of like effect. State v. Nolan, 58 Mont. 167, 191 P. 150; Lantz v. Los Angeles, 185 Cal. 262, 196 P. 481; United States v. Rindge, 208 Fed. 611 (Under California Law). While these statutes permitted a rural highway to be established by dedication of the owner, and our statute does not, the principle involved is the same.

The nearest cases in point herein are those from Arizona involving a statute similar to ours. In Territory v. Richardson, 8 Ariz. 336, 76 P. 456, 457, the court set out the statute of Arizona relating to public highways. The statute was as follows: "All roads and highways in the territory of Arizona which have been located as public highways by order of the board of supervisors, and all roads in public use which have been recorded as public highways, or which may be recorded by authority of the board of supervisors, from and after the passage of this title, are hereby declared public highways; and all roads in the territory of Arizona now in public use, which do not come within the foregoing provisions of this section are hereby declared vacated." The court interpreting this statute said as follows: "Public highways are such only as come within the express provisions of the statutes declaring them to be such. The statutes do not define a private road or way. At common law a private way is the right of passage over or under another person's ground, which belongs to and is for the use of individuals—one or more —as distinct from a way that is used by the public in general, and such a way is an easement. 1 Am. & Eng. Enc. of Law (2d Ed.) p. 3. Such a private way may be

acquired by grant, reservation, prescription, or under a statute authorizing its establishment. In contemplation of law, therefore, though perhaps commonly known and spoken of indiscriminately as public and as private roads, many, if not a majority, of the roads and ways running throughout all parts of the territory, and frequently in general public use, are neither public highways nor private ways, but are simply roads established without authority for the convenience of individuals, and without a legal status either as public highways or private ways. Such roads, where they may have heretofore existed as public highways, and where no right has vested, have by the Legislature been declared vacated." The holding was affirmed in later cases from that state: Champie v. Castle Hot Springs Co., 27 Ariz. 463, 233 P. 1107; Mead v. Hummel, 58 Ariz. 462, 121 P. (2d) 423; Calhoun v. Moore, 69 Ariz. 402, 214 P. (2d) 799, 801. In Curtis v. Southern Pac. Co., 39 Ariz. 570, 8 P. (2d) 1078, 1079, the court said: "The complaint attempts to allege the closing of a right of way acquired by prescription. So far as the general public for whom plaintiffs allege they sue are concerned, the complaint does not state a cause of action, for no public highway or right of way may, since 1901, be established under the law of Arizona in this manner. Territory v. Richardson, 8 Ariz. 336, 76 P. 456; Champie v. Castle Hot Springs Co., 27 Ariz. 463, 233 P. 1107."

It would seem clear that the meaning and effect of the Arizona statute that "all roads in the territory of Arizona now in public use, which do not come within the foregoing provisions of this section are hereby declared vacated" is substantially the same as the provisions of our statute that "no other roads shall be highways unless and until established as such by official authority."

Though the road in question here would be a much

more convenient road for defendants than any other and Christian charity would seem to dictate that an easement over it should be granted to defendants, properly limited so that it would not injure plaintiff's land, we are forced to conclude herein that under present laws of this state the road in question here is not a public road. The judgment of the trial court must, accordingly, be reversed with direction to enter judgment for plaintiff.

*Reversed.*

RINER, J., and HARNSBERGER, J., concur.