2004 WY 132

**Irvin LOZIER, Appellant (Defendant),**

**v.**

**BLATTLAND INVESTMENTS, LLC, a
Wyoming Limited Liability Company,
Appellee (Plaintiff).**

No. 03–243.

Supreme Court of Wyoming.

Nov. 4, 2004.

Rehearing Denied Nov. 23, 2004.

Representing Appellant: Mark W. Gifford, Casper, Wyoming.

Representing Appellee: Gerald R. Mason and Douglas J. Mason of Mason & Mason, P.C., Pinedale, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1]   This is an appeal from a summary judgment granted in an easement contest. At issue is a road across the appellee's lands that the appellant uses to access his ranch. The district court determined that the easement benefited only part of the appellant's ranch and that the right to use and the right to assign the easement were limited.   We reverse.

## ISSUES

1.   Did the district court err in granting summary judgment to the appellee and in holding that the only lands benefited by the easement are the appellant's Section 8 lands?

2.   Did the district court err in granting summary judgment to the appellee and in holding that only the appellant, his family members, employees, agents, guests, visitors, invitees and licensees, but not unrelated third parties, are entitled to the use and benefit of the easement?

3.   Did the district court err in granting the appellee's motion to strike and in denying the appellant's motion to amend concerning the implied easement contention?

4.   Alternatively, does equity require recognition of an implied easement?

## NATURE OF THE CASE

[¶ 2]   The appellant's family has owned the Box R Ranch in Sublette County since the 1890s.   The ranch has been operated as a cattle business and guest ranch since 1898. Historically, the ranch abutted Sublette County Road 120, which provided the sole means of access to the ranch.   A road traversed the ranch from the county road to the ranch home and headquarters.

[¶ 3]   In 1965, the appellant's family sold to John Welborn the portion of the ranch abutting the county road.   The appellant's family retained land in Sections 5 and 8, Township 35 North, Range 109 West, 6th P.M., and Sections 31 and 32, Township 36 North, Range 109 West, 6th P.M. After the conveyance, the appellant's family and ranch guests continued to use the part of the ranch road that crossed the parcel sold to Welborn. The road exits Welborn's property and enters the ranch at Section 8, in which section lie the appellant's ranch home and headquarters.

[¶ 4]   In 1988, an Easement for Access Purposes from Welborn to the appellant was recorded.   The pertinent portions of that easement read as follows:

  JOHN B. WELBORN, grantor, residing in Sublette County, Wyoming, for good and sufficient considerations HEREBY

GIVES AND GRANTS to IRVIN L. LO-ZIER, grantee, residing in Sublette County, Wyoming, and to his administrators, executors, personal representatives, heirs and assigns, the full and free right and liberty, option, privilege and authority for him and his family members, employees, agents, guests, visitors, invitees and licensees, in common with others having the same or similar right, perpetually for all times hereafter to freely pass and re-pass on foot, or with animals, vehicles, loads or otherwise, upon, over, along and across the established, private ranch road of the grantor situated in Sublette County, Wyoming, which said road is located . . .

. . .

TO HAVE AND TO HOLD forever for the use and benefit of said grantee, his family members, employees, agents, guests, visitors, invitees and licensees, in common as aforesaid, as a means of ingress and egress to and from Section 8, Township 35 North, Range 109 West of the 6th P.M., Sublette County, Wyoming;

The grantor hereby expressly consents and agrees that grantee, his administrators, executors, personal representatives, heirs, and assigns may, at their own costs and expense, maintain, repair and otherwise keep said road in a passable condition[.]

[¶ 5] The appellant's family members and ranch guests continued to use the ranch road for several years after the easement was recorded. In 1999, the appellee purchased the Welborn property. The following year, when the appellant made known his plans to subdivide the Box R Ranch, the appellee responded by filing this action. The appellee's first complaint sought a declaratory judgment under Wyo. Stat. Ann. § 1–37–103 (LexisNexis 2003).[1] Specifically, the appellee asked the district court to declare:

1. That access over the easement across the appellee's property is limited to the ap-

pellant, his family members, employees, agents, guests, visitors, invitees and licensees and cannot be used for access by unrelated third parties, nor can the appellant transfer any rights to a third party for that purpose.

2. That access over the easement across the appellee's property is limited to access to the lands of the appellant located in Section 8 only and cannot be used by the appellant or anyone claiming through him to access any other lands.

3. That access over the easement across appellee's property is limited to access the appellant's lands for purposes of operation of the appellant's ranch and cannot be used by multiple residential property owners.

[¶ 6] An amended complaint added allegations of trespass and negligence, and sought an injunction. The appellant's motion for summary judgment, filed before the complaint was amended, was heard after the amendment. The motion was denied on the ground that genuine issues of material fact existed that precluded summary adjudication. Subsequently, the parties settled the issues that had been added by the amended complaint, none of which concerned the easement.

[¶ 7] After a newly appointed district judge took over the case, both parties filed motions for summary judgment. In the memorandum filed in support of his motion, the appellant raised for the first time the alternative theory of implied easement. Prior to the motion hearing, the district court granted the appellee's motion to strike the implied easement theory because it had not previously been pled or otherwise raised. The summary judgment motions were heard on November 7, 2003, and the resultant order granting judgment to the appellee was filed on December 1, 2003. The pertinent findings and conclusions from the order are as follows:

1. The appellee's summary judgment motion did not address his third listed issue, and

---

1. Wyo. Stat. Ann. § 1–37–103 states:

Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordi-

nance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

upon the appellee's motion, that issue is dismissed.[2]

2. The district court concurs with both parties' positions that the easement language is unambiguous.

3. From the plain language of the easement, the parties did not intend the easement to be an unfettered, unlimited access, but intended specifically to limit the persons entitled to the use and benefit of the easement and the lands that were to be benefited by the easement.

4. The use and benefit of the easement is limited to the appellant and his family members, employees, agents, guests, visitors, invitees and licensees, and not unrelated third parties.

5. The benefited lands are those lying in Section 8, and not any other lands belonging to the appellant.

6. The appellant's motion to amend his answer to include a counterclaim for implied easement is untimely and prejudicial to the appellee and is denied.

## STANDARD OF REVIEW

■■■ [¶ 8] Summary judgments are governed by W.R.C.P. 56. Our standard of review of such judgments is well known:

Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. *Eklund v. PRI Environmental, Inc.,* 2001 WY 55, ¶ 10, 25 P.3d 511, ¶ 10 (Wyo. 2001); *see also* W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense that has been asserted by the parties. *Williams Gas Processing—Wamsutter Co. v. Union Pacific Resources Co.,* 2001 WY 57, ¶ 11, 25 P.3d 1064, ¶ 11 (Wyo.2001). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be

drawn from the record. *Id.* We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Scherer Constr., LLC v. Hedquist Constr., Inc.,* 2001 WY 23, ¶ 15, 18 P.3d 645, ¶ 15 (Wyo. 2001). We do not accord any deference to the district court's decisions on issues of law. *Id.*

*Trabing v. Kinko's, Inc.,* 2002 WY 171, ¶ 8, 57 P.3d 1248, 1252 (Wyo.2002).

■■■ [¶ 9] Both the district court and this Court apply the following law when construing an easement:

"When construing an easement, we seek to determine the intent of the parties to the easement ... and begin by attempting to glean the meaning of the easement from its language." *R.C.R., Inc. v. Rainbow Canyon, Inc.,* 978 P.2d 581, 586 (Wyo. 1999); *see also Restatement (Third) Property* (Servitudes) § 4.1 (2000). If the language of the easement is clear and unambiguous, we interpret the easement as a matter of law, without resorting to the use of extrinsic evidence to determine the parties' intent. *R.C.R.,* 978 P.2d at 586. If, however, the language is ambiguous, then the court looks to extrinsic evidence to ascertain the parties' intent. *Hasvold [v. Park County School District No. 6,* 2002 WY 65, ¶ 13, 45 P.3d 635, 638 (Wyo.2002) ]; *R.C.R., Inc.* 978 P.2d at 586; *Edgcomb v. Lower Valley Power & Light, Inc.,* 922 P.2d 850, 855 (Wyo.1996).... To determine the intent of the parties, the context in which the easement was drafted must be considered.

"The language of a contract is to be construed within the context in which it was written. In so doing, the court may look to the surrounding circumstances, the subject matter and the purpose of the contract. The purpose of examining the context within which the contract was drawn, however, is limited to ascertaining the intent of the parties at the time the agreement was made. The context cannot be invoked to contradict

---

2. The effect of the absence of a ruling on this    issue has not been raised before this Court.

the clear meaning of the language used, and those extraneous circumstances do not justify a court in proceeding to insert therein a provision other than or different from that which the language used clearly indicates, and thereby, in effect, make a contract for the parties."

*Snow v. Duxstad,* 23 Wyo. 82, 147 P. 174 (1915).

*Pokorny v. Salas,* 2003 WY 159, ¶ 23, 81 P.3d 171, 177–78 (Wyo.2003). The principles of contract construction apply to construction of an easement. *Lamb v. Wyoming Game and Fish Com'n,* 985 P.2d 433, 437 (Wyo.1999); *Salt River Enterprises, Inc. v. Heiner,* 663 P.2d 518, 521 (Wyo.1983). One of those principles is that words are given the plain meaning and effect that reasonable persons would have given them at the time and place of their use. *Wadi Petroleum, Inc. v. Ultra Resources, Inc.,* 2003 WY 41, ¶ 10, 65 P.3d 703, 708 (Wyo.2003) (*quoting Amoco Production Co. v. EM Nominee Partnership Co.,* 2 P.3d 534, 539–40 (Wyo.2000)); *Klutznick v. Thulin,* 814 P.2d 1267, 1270 (Wyo.1991).

## DISCUSSION

[¶ 10] We begin our discussion by stating that we agree with the parties and the district court both that there are no genuine issues of material fact in this case and that the easement at issue is unambiguous. We do not, however, agree with the conclusion of the district court as to the easement's limited intent. The language of the instrument and the context within which it was drafted do not indicate that it was the parties' intention to limit the historically unrestricted use of the easement.

[¶ 11] For twenty-five years after Welborn bought the part of the ranch adjacent to the county road, the appellant's family continued to use the access road crossing Welborn's parcel. Shortly before his death, Welborn suggested that an easement should be recorded. The resulting unambiguous easement has all the "badges" of an appurtenant access easement:

The present case has all of the earmarks of an easement appurtenant. To identify easements appurtenant, this Court established certain "badges" of an appurtenance

which include: (1) the easement was created to benefit a specific tract of land; (2) the grant was for a perpetual right-of-way for ingress and egress; (3) the grantee has the right to inspect and maintain the easement; (4) the right is not limited to the possessor personally; (5) the grant expressly extends the right to the grantees, their heirs, executors, administrators, successors, assigns and legal representatives; and (6) the easement document does not contain any limitations on the transferability of the easement to future transfers of both the dominant and servient estates. *Hasvold,* ¶ 21.

*Pokorny,* 2003 WY 159, ¶ 25, 81 P.3d at 178. In particular, we have noted many times that use of words such as "heirs, successors and assigns" indicates the desire to create a perpetual appurtenant access easement. *Id.,* 2003 WY 159, ¶ 24, 81 P.3d at 178; *Hutchings v. Krachun,* 2002 WY 98, ¶ 14, 49 P.3d 176, 181 (Wyo.2002), *abrogated on other grounds by White v. Allen,* 2003 WY 39, 65 P.3d 395 (Wyo.2003); *Baker v. Pike,* 2002 WY 34, ¶ 13, 41 P.3d 537, 542 (Wyo.2002); *R.C.R., Inc. v. Rainbow Canyon, Inc.,* 978 P.2d 581, 586 (Wyo.1999).

[¶ 12] The appellee presents two arguments in support of its contention that the easement creates much more limited rights. First, the appellee notes that the grant to the grantee "and to his administrators, executors, personal representatives, heirs and assigns" is followed by language "limiting" exercise of the easement rights to "him and his family members, employees, agents, guests, visitors, invitees and licensees...." Second, the appellee points out that the right of ingress and egress is "limited" "to and from Section 8." The combined effect of these provisions, according to the appellee, is that the easement's road may only be used by the specifically listed persons, and only to reach Section 8. The appellee's hope, of course, is to prevent anyone purchasing a subdivided lot from the appellant from using the road as access.

[¶ 13] We do not accept the appellee's interpretation of the instrument because it contradicts the clear language of the granting clause, it is contra-indicated by the con-

text in which the easement was granted, and it is unreasonable. Historically—both before and after the easement was granted—the appellant and his family operated a cattle business and a guest ranch on their property. In furtherance of those purposes, they used the access road across Welborn's property, and the record reveals no restrictions upon that use, either in terms of persons or purposes. And there is simply nothing within the easement's language to suggest that such restrictions were intended. To the contrary, the language of the easement is very broad in its granting clause, with use of the words "administrators, executors, personal representatives, heirs and assigns" clearly indicating an unlimited perpetual grant, rather than a personal license or other limited right. Furthermore, the record contains no contextual evidence that the easement was drafted to limit future access. To read the language "him and his family members, employees, agents, guests, visitors, invitees and licensees" more narrowly simply reads out of the instrument the "heirs and assigns" language. In fact, that additional language expands, rather than limits, the scope of the easement most likely in recognition of the historic use of the ranch which involved guests, suppliers and contractors.

[¶ 14] The appellant's ranch is made up of lands lying within four separate sections, with the main ranch home and headquarters located in Section 8. The appellee contends that, if this is an appurtenant easement, the dominant estate is limited to Section 8, and the grantees may not use the easement road to access the other sections of the ranch. We reject this contention because it is simply unreasonable under the circumstances of this case. The only reasonable purpose for the mention of Section 8 in the easement document is the fact that the easement road exits the Welborn property and enters the appellant's ranch in Section 8. It is inconceivable,

especially given the total lack of any contextual evidence to that effect, that Welborn intended to allow the appellant to enter his ranch across Welborn's property, but only if the appellant remained within Section 8 once he got on his own property. Stated conversely, we have been shown no reason, and we can imagine none, why Welborn would have intended to prevent the appellant from using his ranch lands in the other three sections.

[¶ 15] Easements are presumed to be appurtenant, rather than in gross, and we have recognized a strong preference to construe easements as being the former, rather than the latter. *Pokorny*, 2003 WY 159, ¶ 23, 81 P.3d at 177. Furthermore, the dominant tenement need not be described within the instrument, so long as it exists and can be identified. *Id.*, 2003 WY 159, ¶¶ 27–28, 81 P.3d at 179. That is certainly the case here, where the sole purpose of the easement was to provide access to the appellant's ranch.

## CONCLUSION

[¶ 16] Use of the easement is not limited to the appellant, his family members, employees, agents, guests, visitors, invitees and licensees, but is available to unrelated third parties who may become purchasers of all or part of the dominant estate. Neither is use limited to those grantees intending only to access Section 8. Rather, this is an appurtenant access easement, with the dominant tenement being the appellant's ranch lands lying in Sections 5 and 8, Township 35 North, Range 109 West, and Sections 31 and 32, Township 36 North, Range 109 West, 6th P.M.[3] We reverse the summary judgment awarded to the appellee and, inasmuch as there are no genuine issues of material fact, the instrument is unambiguous, and the appellant also filed a motion for summary judg-

---

3. This case exists, of course, because of the appellant's stated intent to subdivide his ranch. The issues of changing or enlarging the use of an easement, in general, and of subdividing, in particular, have been peripheral, but have not been directly addressed before this Court. *See Van Raden v. Harper*, 891 P.2d 78, 79 (Wyo.1995), *overruled on other grounds by White v. Allen*, 2003 WY 39, 65 P.3d 395 (Wyo.2003) (dominant own-

er may not materially enlarge use); *Mueller v. Hoblyn*, 887 P.2d 500, 505 (Wyo.1994) (subdivision purchasers may use appurtenant easement); *State v. Homar*, 798 P.2d 824, 826 (Wyo.1990) (use defined by purpose, not frozen in time); and *Delgue v. Curutchet*, 677 P.2d 208, 214 (Wyo. 1984) (any possessor of dominant estate may use appurtenant easement).

ment, we remand for entry of a summary judgment in favor of the appellant.

[¶ 17] The issues involving an implied easement are moot.